IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ESSEX INSURANCE COMPANY         :        CIVIL ACTION
                                :
        v.                      :
                                :
RAYSKI, INC.                    :        NO. 07-9

MEMORANDUM

Bartle, C.J.                                      July 2, 2007

        This is a contribution action in which plaintiff Essex
Insurance Company ("Essex") seeks to recover $205,157.08 from
defendant Rayski, Inc. ("Rayski"), that is, one-half of the
$410,315.15 Essex paid on behalf its insured, RMJC, Inc.
("RMJC"), to satisfy a judgment entered against both Rayski and
RMJC in the Court of Common Pleas of Philadelphia County in the
case of Jaworski, et al. v. RMJC, et al., Civ. A. No. 3018
(Phila. C.C.P., June Term, 2001).  Before the court are the
motions of Essex and Rayski for summary judgment pursuant to Rule
56 of the Federal Rules of Civil Procedure.

                                I.

        This is the most recent in a series of civil and
criminal cases filed in both state and federal courts arising out
of an incident at the Show 'N Tel strip club in Philadelphia on
March 26, 2000.  We recite the facts in the light most consistent
with the verdict in favor of Mark Jaworski ("Jaworski") and

against Rayski and RMJC[1] in the underlying civil trial in the
Court of Common Pleas of Philadelphia County.

On the evening in question Jaworski was participating
in the bar-hopping bachelor party of his brother-in-law.  The
celebrants had rented a school bus for transportation throughout
the evening and stocked it with coolers containing various
alcoholic beverages.  After stops at the Victory Brewing Company
in Downingtown and Dave & Busters at Pier 19 on the Delaware
River in Philadelphia, they arrived at Show 'N Tel at
approximately 11 p.m.

Show 'N Tel was particularly packed with patrons that
evening and, not surprisingly, someone spilled a drink on the
floor.  The staff attempted to clear sufficient space in which to
clean it up.  According to Jaworski's testimony, it was at about
that time that a large bouncer told him to "get the f**k out of
the way" as he proceeded through the crowd.  The bouncer then sat
on a stool and lighted a cigar.  Jaworski claimed that he
attempted to lighten the mood by asking the type of cigar.  In
lieu of a reply, the bouncer stood up and punched him in the
face, causing him to fall to the ground where he was allegedly
kicked and punched.  While the parties vigorously dispute what
happened next, Jaworski testified that the bouncers then picked
him up, carried to the door, and hurled out of the club and down

---

1.  Jaworski also named a third defendant, Starlight Management
Company, which was subsequently dismissed from the case.

the stairs.  As a result, he landed on the sidewalk and sustained
injuries to his left wrist.[2]

In the aftermath of these events, the Commonwealth
charged Terrence Benson, the bouncer who punched Jaworski, with
aggravated assault, simple assault, and recklessly endangering
another person.  A bench trial was held on March 6, 2001 before
The Honorable Lisa Richette of the Court of Common Pleas of
Philadelphia County.  The evidence showed that while Benson did
strike Jaworski in the bar, he did not throw him out of the club
and down the stairs.  Consequently, Judge Richette convicted
Benson of simple assault and sentenced him to probation.

In the meantime, Jaworski had filed a civil action in
the Court of Common Pleas against RMJC and Rayski.  The amended
complaint alleged that the defendants were negligent or reckless
in failing to exercise due care when they forcibly removed him
from Show 'N Tel and that the defendants' lack of care caused
Jaworski to fall down the stairs and suffer injury.  At trial,
the defendants admitted that the bouncers were employed by Rayski
and the manager and cleaner were employed by RMJC.

The case was submitted to the jury on the theory of
negligence.  The jury found that both Rayski and RMJC were
negligent and the negligence of each was a "substantial factor in
bringing about the harm" suffered by Jaworski (emphasis added).
It also found that Jaworski was not contributorily negligent.  It

---

2.  Essex has consistently argued this sequence of events based
on the testimony of Jaworski.

awarded $350,000 in damages, apportioned equally between the RMJC and Rayski.  The "full description of disposition" as set forth in the "trial work sheet" signed by Judge Nitza I. Quinones-Alejandro to be entered on the Common Pleas Court docket stated: "Defendants RMJC, Inc., and Rayski, Inc., were found equally ~~each~~ liable to Plaintiff Mark Jaworski in the amount of $350,000." After unsuccessful appeals to both the Pennsylvania Superior and Supreme Courts, Essex paid Jaworski $410,315.15, that is, the full judgment plus delay damages and post-verdict interest.

Soon after Jaworski brought the underlying action against Rayski and RMJC, Essex sought a declaratory judgment in this court that it was not obligated to indemnify nor defend its insured, RMJC.  Essex v. RMJC, Civ A. No. 01-4049 (E.D. Pa.).  In a Memorandum and Order dated May 23, 2005, we held that Essex had a duty both to defend its insured and indemnify it.  On September 27, 2006, our Court of Appeals reversed our holding that Essex was obligated to indemnify RMJC and remanded for further proceedings on the question of whether Jaworski's injuries arose out of an assault and battery.  Essex Ins. Co. v. Starlight Management Co., 198 Fed. Appx. 179, 2006 WL 2786871 (3d Cir. 2006).  Cross motions for summary judgment are pending before us in that case.

On January 2, 2007, Essex filed this action seeking contribution from Rayski for its share of the judgment in the Jaworski action.  As noted above, both sides have filed motions for summary judgment.  See Anderson v. Liberty Lobby, Inc., 477

-4-

U.S. 242 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990).

II.

Pennsylvania law permits a plaintiff prevailing against multiple defendants for the same legal wrong to recover the full amount from any one defendant. <u>See</u> 42 Pa. Cons. Stat. Ann. §§ 7102(b), 8322, 8324. The defendant who pays the judgment may in turn sue the remaining defendants to obtain contribution for their pro rata share. <u>Id.</u> Contribution is permitted if the defendants have been found "jointly or severally liable in tort for the same injury to persons ..." <u>Id.</u> §§ 8322; 8324(b). The statute provides:

> Where recovery is allowed against more than
> one defendant, each defendant shall be liable
> for that proportion of the total dollar
> amount awarded as damages in the ratio of the
> amount of his causal negligence to the amount
> of causal negligence attributed to all
> defendants against whom recovery is allowed.
> The plaintiff may recover the full amount of
> the allowed recovery from any defendant
> against whom the plaintiff is not barred from
> recovery. Any defendant who is so compelled
> to pay more than his percentage share may
> seek contribution.

42 Pa. Cons. Stat. Ann. § 7102(b). Despite efforts to repeal this section and alter the rule it contains, joint and several liability remains the law in the Commonwealth.[3]

_____

3.  In 2002, the General Assembly repealed § 7102(b) and enacted a general rule of several liability in most cases. <u>See</u> Act 2002, June 19, P.L. 394, No. 57, § 2. The repeal and new rule were tacked onto the 2002 Act, the title and primary purpose of which was to amend the DNA Detection of Sexual and Violent Offenders
(continued...)

Under Pennsylvania law, "[w]hether liability for harm
to a plaintiff is capable of apportionment is a question of law
for the court, not a question of fact for the jury."  <u>Neal v.
Bavarian Motors, Inc.</u>, 882 A.2d 1022, 1027 (Pa. Super. 2005)
(quotation omitted).  In determining whether defendants are
separate or joint tortfeasors, courts consider several factors:

> the identity of a cause of action against
> each of two or more defendants; the existence
> of a common, or like duty; whether the same
> evidence will support an action against each;
> the single, indivisible nature of the injury
> to the plaintiffs; identity of the facts as
> to time, place or result; whether the injury
> is direct and immediate, rather than
> consequential; responsibility of the
> defendants for the same injuria as
> distinguished from the same damnum.

<u>Id.</u> (quoting <u>Voyles v. Corwin</u>, 441 A.2d 381, 383 (Pa. Super.
1982)).  The Pennsylvania Superior Court has explained that if
"two or more causes combine to produce a single harm which is
incapable of being divided on any logical, reasonable, or
practical basis, and each cause is a substantial factor in
bringing about the harm, an arbitrary apportionment should not be
made."  <u>Id.</u>  (quotation omitted).  Indeed, the Pennsylvania

---

3.  (...continued)
Act of 1995.  In <u>DeWeese v. Weaver</u>, 880 A.2d 54 (Pa. Commw.
2005), the Pennsylvania Commonwealth Court held the changes to
the comparative negligence statute made by the 2002 Act violated
the "single subject rule" and, therefore, were unconstitutional
and void.  The "single subject rule" requires that "each bill
have only one subject, and that the subject be clearly expressed
in the title."  Pa. Const. art. III, § 3; <u>see also</u> <u>City of
Philadelphia v. Commonwealth</u>, 838 A.2d 566, 585-593 (Pa. 2003);
<u>Pennsylvanians Against Gambling Expansion Fund, Inc. v.
Commonwealth</u>, 877 A.2d 383 (Pa. 2005).

Superior Court commented that "most personal injuries are by their very nature incapable of division." Id. at 1028.

                                III.

       Rayski proffers several theories to support its claim that Essex is not entitled to recover money against it. Rayski claims that RMJC waived Essex's right to contribution, there is no right of contribution because Rayski and RMJC have never been declared joint tortfeasors, and that RMJC, not Essex, is the proper party in interest.

       At the outset, we reject Rayski's argument that RMJC waived its right to recover against Rayski pursuant to the terms of the insurance policy under which Essex insured RMJC. The waiver provision cited by Rayski is part of the Commercial Property Conditions policy issued by Essex to RMJC. It allows the insured to waive any rights it may have against another party in writing if, at the time of loss "to the insured's covered property or covered income," that other party is a "business firm" owned by the insured or that owns the insured.[4] RMJC never made any claim of loss to property or income regarding the March 26 incident at Show 'N Tel. Rather, because Jaworski asserted that the defendants, RMJC and Rayski, were negligent, Essex defended RMJC and indemnified it pursuant to the Commercial General Liability policy, which does not contain a similar waiver

_____

4.  We assume without deciding that Rayski and RMJC are both
"business firms" within the meaning of the Commercial Property
Conditions policy and that one owns the other.

                                -7-

provision.  In short, the Commercial Property Conditions policy
and its waiver provision are irrelevant to this case.
Consequently, we disregard the letter of Raymond Miles'
("Miles"), who was both President of RMJC and owner of a
controlling interest in Rayski in March, 2000, in which he
purports to waive RMJC's rights against Rayski pursuant to the
waiver provision of the Commercial Property Conditions policy.[5]

Rayski next argues that it and RMJC are not joint
tortfeasors, a prerequisite for contribution actions under 42 Pa.
Cons. Stat. Ann. § 8324(a), because they were never adjudged or
declared to be so by any court and because the facts suggest the
defendants committed separate, independent actions that caused
Jaworski's injuries.  Rayski correctly points out that the Court
of Common Pleas did not specifically state that it and RMJC were
"joint tortfeasors."  Nevertheless, we reject Rayski's contention
that RMJC and it were not joint tortfeasors because both the
evidence and the jury's findings recorded on the verdict sheet
demonstrate that they were.

As noted above, Jaworski testified he was punched by a
bouncer in the Show 'N Tel bar and then picked up by bouncers and
hurled out of the bar and down the stairs.  The verdict form asks
the jury if each defendant (and the plaintiff) was negligent and,

---

5.  We note that even if the General Liability policy had an
identical provision, such a letter would not waive Essex's right
to contribution.  Essex acquired RMJC's right of contribution at
the time the former paid the entire Jaworski judgment.  RMJC
therefore had no right of contribution it could waive.

if so, whether that negligence was "a substantial factor in bringing about the <u>harm</u> to the plaintiff ..." (emphasis added). The verdict form then requires the jury to apportion any causal negligence among the parties before stating the "amount of damages, if any, sustained ... as a result of this accident." The jury found that each defendant was 50% liable for Jaworski's injuries.  The only reasonable interpretation of the jury's findings is that the defendants were joint tortfeasors since the jury found only a single harm to Jaworski.  Based on the evidence, that single harm is "incapable of being divided on any logical, reasonable, or practical basis..."  <u>Neal</u>, 882 A.2d at 1027.[6]

<u>Voyles v. Corwin</u>, 441 A.2d 381 (Pa. Super. 1982), and <u>Laprogota v. Qualls</u>, 397 A.2d 803 (Pa. Super. 1979), do not demand a different conclusion.  In <u>Voyles</u> and <u>Laprogota</u>, the plaintiffs suffered injuries in motor vehicle accidents and, later, from medical malpractice.  In both cases the court held the defendant doctors and drivers were not joint tortfeasors. The <u>Voyles</u> and <u>Laprogota</u> defendants owed different duties to the

---

6.  The charge reinforces our conclusion.  The court stated:  "A person may be the servant of two masters, not joint employers at one time as to one act provided that the service to one does not involve abandonment of the service to the other.  If you find that the security guards or bouncers were subject to the control of both defendants, Rayski, Inc., and RMJC, Inc., and that their acts were within the scope of their employment for both and serving the interests of both, you may find both defendants liable.  If, however, you find that such bouncers were under the sole control of one defendant and w[ere] serving the interest and purpose of that defendant only, then only that defendant alone can be held liable."  N.T. 2/6/03 at 66-67.

respective plaintiffs.  The evidence in the claim against the
doctors was not the same and was of a different kind as that
introduced against the motorists.  In addition, the tortious
actions of the various defendants in each case occurred at
different times and places.  In contrast, the entire scenario
here occurred within a short interval.  Moreover, the harm to
Jaworski happened at the Show 'N Tel bar as a result of tortious
conduct by persons employed to work there.  Rayski and RMJC owed
Jaworski the same duties, specifically to hire and train
employees to maintain order and to remove unruly customers from
Show 'N Tel in a safe manner.

        Finally we reject Rayski's arguments that Essex is the
wrong plaintiff and that RMJC is the proper party to bring suit.
Rule 17(a) requires that "[e]very action shall be prosecuted in
the name of the real party in interest." Fed. R. Civ. P. 17(a).
Essex, not RMJC, is the real party in interest.  The Second
Circuit has explained that "status as a real party in interest is
a procedural matter; therefore, in diversity cases federal law
governs the issue of in whose name a lawsuit must be brought."
Ocean Ships, Inc. v. Stiles, 315 F.3d 111, 116 (2d Cir. 2002)
(internal quotation omitted).  The Supreme Court has explained
the proper Rule 17(a) analysis applicable to subrogation
arrangements.  See United States v. Aetna Cas. & Sur. Co., 338
U.S. 366 (1949).  "If the subrogee has paid an entire loss
suffered by the insured, it is the only real party in interest
and must sue in its own name." Id. at 380-81 (internal citation

-10-

omitted).  Essex's insured, RMJC, was found liable for 50% of
Jaworski's injuries which the jury valued at $350,000.  After
losing its appeals, Essex paid 100% of the judgment including all
delay damages and post-verdict interest on or before April 5,
2005.  As Essex paid the entire loss of its insured, it is the
real party in interest in this contribution action and must sue
in its own name.

Both RMJC and Rayski were found by a jury to be
negligent and equally responsible for injuries sustained by Mark
Jaworski.  The evidence and the jury verdict in the underlying
state court action establish the defendants were joint
tortfeasors.  Essex paid the entire $410,315.15 to satisfy the
judgment for which its insured and Rayski were each 50%
responsible.  In doing so, Essex acquired the right to sue Rayski
for contribution in its own name to recover $205,157.08, that is,
Rayski's portion of the judgment.  See Aetna, 338 U.S. at 380-81.
RMJC has not waived this right.  Essex has demonstrated that it
is entitled to recover from Rayski 50% of the amount it paid to
satisfy the judgment in favor of Jaworski and against Rayski and
RMJC.

Accordingly, we will grant Essex's motion for summary
judgment and deny Rayski's motion for summary judgment.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ESSEX INSURANCE COMPANY          :          CIVIL ACTION
                                 :
            v.                   :
                                 :
RAYSKI, INC.                     :          NO. 07-9

ORDER

        AND NOW, this 2nd day of July, 2007, for the reasons
set forth in the accompanying Memorandum, it is hereby ORDERED
that:

        (1)  the motion of plaintiff Essex Insurance Company
for summary judgment is GRANTED;

        (2)  the motion of defendant Rayski, Inc., for summary
judgment is DENIED; and

        (3)  judgment is entered in favor of plaintiff Essex
Insurance Company and against defendant Rayski, Inc., in the
amount of $205,157.08.

                            BY THE COURT:


                            /s/ Harvey Bartle III
                                                      C.J.